**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 10-cv-00799-CMA-CBS

NATASHA WEIL,

      Plaintiff,

v.

CARECORE NATIONAL, LLC, a New York limited liability company,

      Defendant.

---

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on Defendant Carecore National, LLC's ("Defendant") Motion for Summary Judgment. (Doc. # 29.) In this case, Plaintiff Natasha Weil ("Plaintiff") brings suit against Defendant, her former employer, pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Specifically, Plaintiff alleges that Defendant unlawfully retaliated against her for exercising her rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(2), and retaliated against her for exercising her rights under the ADA, in violation of 42 U.S.C. § 12203(a).

## I. <u>BACKGROUND</u>

The following facts are undisputed, unless otherwise noted. The Court will elaborate, as needed, in its analysis section.

Plaintiff began working for Defendant on October 2, 2006, as a Clinical Decision Support ("CDS") Representative.  CDS Representatives answer calls that come into Defendant's call centers.  On or about January 10, 2007, Plaintiff was allowed to begin working from home, which is a privilege not given to every Carecore employee.  (Doc. # 42-1, ¶ 8.)  When logged into Defendant's telecommunications system, Plaintiff inputted codes to let her employer know whether or not she was available to receive calls.  If she was not available, she input a code that put her in "auxiliary mode." If Plaintiff's system was in auxiliary mode for too long, either her supervisor, Coleen Thurston, or a "runner"[1] would contact her by instant message or email message to determine whether she needed assistance or would soon be ready to take another call.

On January 2, 2008, Plaintiff provided Defendant with a "Certificate of Disability" from a doctor stating that she could not perform her regular duties from January 2 through January 31, 2008.  The certificate stated that Plaintiff should be permitted to take "restroom breaks as needed."  (Doc. # 38-1 at 2.)  Plaintiff submitted another doctor's note on March 31, 2008, stating that Plaintiff "requires restroom breaks on an as needed basis for the benefit of her health."  (Doc. # 29-6.)  Neither note diagnosed a condition or distinguished Plaintiff's need from anyone else's need to access a restroom.  (Doc. ## 38-1 at 2, 29-6.)  Although Plaintiff never sought leave for restroom

---

[1] A "runner" is a Workforce Management employee who provides assistance to CDS Representatives on difficult calls.

breaks, she took FMLA leave for depression from March 25, 2008 through April 7, 2008. (Doc. ## 29-8; 29-9.)

On May 30, 2008, Defendant gave Plaintiff a formal written warning for improperly using instant messaging technology, sending information from her business computer to her personal email address, and claiming not to have received an email message that Defendant found in her deleted messages folder.  In the portion of the form allowing for responsive comment, Plaintiff stated that she had not received the email message found in her deleted messages folder and that she was trained to email documents from her business computer to her personal email address.  Plaintiff conceded that she had improperly used instant messaging technology.  (Doc. # 29-10.)

Later that day, Plaintiff informed her supervisor, Coleen Thurston, that she wanted to levy a complaint of harassment against Regional Human Resources Manager Geri Westberg.  By instant message, Plaintiff wrote the following:

> I would like to make a formal complaint for medical descrimination [sic] and harrassment [sic].  When I first came down sick and used my PTO up I began to get problems from [Westberg] back in January.  After I had a breakdown and my doctor placed my [sic] on leave for two weeks. sending [sic] in documentation of my medical conditions, situations [sic] took a turn for the worse and now everytime [sic] I turn around I am getting written up for anything and everything, including things I was trained to do and given an OK a year prior.  I have also submitted two prior reports of harrassment [sic] from [Westberg] in HR and nothing was never [sic] investigated.
> . . . .
> Since giving my MD note, I still receive daily IM's form [sic] runners and supervisors, asking if I am aware that I have been on break, when I have MD permission to do so for medical needs.  I feel that since [Defendant] has been advised of my medical that I am trying to be let go of my job, each write up being used as leverage.

(Doc. # 29-11.)  On June 10, 2008, Janet Galloway, Vice President of Human Resources, interviewed Plaintiff over the telephone about her complaint.  In that telephone call, Plaintiff reiterated her allegation that runners were harassing her via instant message communications over the length of her restroom breaks, despite having knowledge of her doctor's note providing that Plaintiff should be allowed to take restroom breaks as needed.  (Doc. # 29-20 at 10-12.)  Plaintiff also expressed suspicion that the alleged harassment might stem from Westberg's belief that Plaintiff had distributed an anonymous letter complaining about work conditions.  (*Id.* at 8-9.)

On July 10, 2008, Defendant notified Plaintiff that it had concluded its investigation and found no wrongdoing by Westberg.  Also on July 10, Defendant received a complaint from a customer whose calls to Defendant had twice been disconnected that day.  Defendant traced both disconnected calls to Plaintiff's work station.  Recordings of the calls indicated that Plaintiff had not interacted with the caller before the calls were disconnected.   Defendant initially considered this to be a serious violation of their Telephone Policy.[2]

On the morning of July 11, 2008, Defendant attempted to limit Plaintiff's restroom usage on the grounds that her restroom breaks exceeded normal company standards and that her January 2, 2008 doctor's note had expired on January 31, 2008.  After Plaintiff responded that she had submitted two subsequent doctor's notes, Defendant withdrew its attempt to limit Plaintiff's restroom use.  (Doc. # 38-8.)  Approximately four hours later, Plaintiff partook in a telephone conversation with Thurston, Galloway, and

---

[2]  The Telephone Policy states that Defendant maintains a Zero Tolerance policy for "[t]erminating a customer call without cause or provocation."   (See Doc. # 29-21 at 8.)

Paula Miller, a Human Resources employee, concerning the disconnected calls.  (Doc. # 29-1 at 233:1-234:12.)  During the call, Plaintiff insisted that equipment malfunction had caused the disconnections.  Galloway responded that "it's your word against the verification that we have given the measuring, the recordings, the tools that we have to pinpoint where the source of the disconnection was."  (Doc. # 29-22 at 4.)  After Plaintiff asked about her medical problems, Galloway replied that Plaintiff's medical issues did not have anything to do with the discipline, which related only to the disconnected calls. (*Id.* at 4-5.)

Although Plaintiff was cautioned that she could be terminated for the offense, Defendant instead issued a Final Written Warning (the "Warning").  Pursuant to the Warning, Plaintiff's remote privilege was revoked and she was told to report to the Colorado Springs office the following Monday.  The Warning also stated that any similar occurrences would subject Plaintiff to further disciplinary action up to and including termination.  (Doc. # 29-13 at 2.)  In response to Plaintiff's insistence that the disconnected calls were due to equipment malfunction, Galloway instructed Plaintiff to bring her equipment to the office to have it tested.  (Doc. # 29-22 at 12.)

On July 14, 2008, instead of returning to the Colorado Springs office, Plaintiff submitted a note from Dr. Susan Dattilo.  Dr. Dattilo wrote that Plaintiff would not be able to return to the "home office due to her medical problems.  [Plaintiff] was coping medically by working at home but the office has physical and emotionally [sic] challenges that aggravate her conditions.  Due to excessive monitoring and current accusations, she is under severe stress and is not able to work in any capacity at this time."  (Doc. # 29-14.)  Defendant subsequently granted Plaintiff FMLA leave.

While on leave, Plaintiff provided Defendant with a statement, dated August 1, 2008, from Michael Coke, in support of her assertion that her telecommunication equipment was defective.  (Doc. # 29-17.)  Coke, a Qwest technician, concluded that Plaintiff's work phone had a "technical problem and should be replaced, the disconnected calls from what I can tell were/are not being done by [Plaintiff]."  (Doc. # 29-17.)  Based on this information, Defendant rescinded the Warning, instead making a Record of Verbal Counseling ("Verbal Counseling").  Defendant determined that Plaintiff had been "releasing one call as another was coming in, which will result in a disconnect of the subsequent call," and concluded that this problem reflected "a performance issue rather than a policy violation."  Defendant reinstated Plaintiff's remote privilege but instructed her to first attend one week of retraining in the Colorado Springs office.  (Doc. ## 29-16, 29-21 at 3.)

Plaintiff stayed on FMLA leave until she exhausted it on September 23, 2008. After Galloway inquired about Plaintiff's prognosis for returning to work, Plaintiff informed Galloway that her doctor had not cleared her to return to work and could not predict when she would be able to return.  Defendant removed Plaintiff from the payroll on September 30, 2008, but stated that she would be eligible for consideration for re-hire.  (Doc. # 29-2.)

## II.  **STANDARD OF REVIEW**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the

6

nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)

(citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the

proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on

each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing

*Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a

genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at

670-71. In attempting to meet that standard, a movant who does not bear the ultimate

burden of persuasion at trial does not need to disprove the other party's claim; rather,

the movant need simply point out to the court a lack of evidence for the other party on

an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477

U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving

party to "set forth specific facts showing that there is a genuine issue for trial."

*Anderson*, 477 U.S. at 256; *see also Adler*, 144 F.3d at 671 n.1 (concerning shifting

burdens on summary judgment). The nonmoving party may not simply rest upon its

pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256. Rather, the nonmoving

party must "set forth specific facts that would be admissible in evidence in the event of

trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at

671. "To accomplish this, the facts must be identified by reference to affidavits,

deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."  *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## III.  ANALYSIS

In this case, Plaintiff brings retaliation claims under the ADA and the FMLA. Under ADA § 503 – which prohibits "retaliation and coercion" by an employer – "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  The anti-retaliation provision of the FMLA provides that "[i]t shall be unlawful for another to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."[3]  29 U.S.C. § 2615(a)(2).

Retaliation claims under both the FMLA and ADA are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006) (applying *McDonnell Douglas* framework to FMLA retaliation claim); *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1207-08 (10th Cir. 2007) (applying *McDonnell Douglas* framework to ADA retaliation claim).

---

[3] 29 U.S.C. § 2617(a) authorizes employees to bring a cause of action for a violation of § 2615(a).

Under *McDonnell Douglas*, the plaintiff bears the burden of establishing a prima facie case of retaliation. *Metzler*, 464 F.3d at 1170. If the plaintiff does so, the burden shifts to the defendant to offer a legitimate, non-retaliatory reason for the employment action. *Id*. The plaintiff then bears the ultimate burden of showing that defendant's proffered reason was pretextual. *Id*. Even viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to set forth facts showing that there exists a genuine issue for trial because Plaintiff cannot establish a prima facie case of retaliation under either the ADA or FMLA. Accordingly, Defendant's Motion for Summary Judgment should be granted.

## A.    PRIMA FACIE CASE OF RETALIATION

To establish a prima facie case of retaliation, Plaintiff must prove that (1) "she engaged in a protected activity;" (2) Defendant "took an action that a reasonable employee would have found materially adverse;" and (3) "there exists a causal connection between the protected activity and the adverse action." *Metzler*, 464 F.3d at 1171.

### 1.    Protected Activity

#### a)    *ADA retaliation claim*

In order to establish her prima facie case of retaliation under the ADA, Plaintiff must first demonstrate that she "engaged in protected opposition to discrimination." *E.E.O.C. v. C.R. England, Inc.*, --- F.3d ---, Nos. 09-4207, 09-4217, 2011 WL 1651372, at *17 (10th Cir. May 3, 2011). The alleged protected activity in this case is Plaintiff's May 30, 2008 complaint to Thurston concerning "medical descrimination [sic] and harrassment [sic]." (Doc. # 29-11.) A complaint constitutes a protected activity

9

for purposes of an ADA retaliation claim. *See Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004) ("Protected opposition can range from filing formal charges to voicing informal complaints to superiors.").   However, the fact that Plaintiff filed a complaint does not necessarily mean that she has engaged in protected opposition **to discrimination**.   Plaintiff must show that she had a reasonable, good faith belief that the ADA had been violated at the time she voiced her complaint. *See Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1194 (10th Cir. 2007); *Maxey v. Rest. Concepts II, LLC*, 654 F. Supp. 2d 1284, 1296 (D. Colo. 2009) (stating that in Age Discrimination in Employment Act (ADEA) retaliation case that an "employee must do more than conclusorily incant that he is protesting age discrimination.").

A plaintiff may pursue an ADA retaliation claim without showing that she suffers from an actual disability. *See Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001) (stating that "a reasonable, good faith belief that the statute has been violated suffices" to bring an ADA retaliation claim).   Plaintiff does not contend that she was actually disabled; however, she argues that she had a reasonable, good faith belief that Defendant's alleged discrimination against her violated the ADA.   Defendant questions the reasonableness of Plaintiff's belief.   Although there is no indication that Plaintiff's complaint was not made in good faith, the Court finds that Plaintiff lacked a reasonable belief that Defendant had discriminated against her in violation of the ADA. As such, Plaintiff cannot satisfy the first prong of establishing a prima facie case with regard to her ADA retaliation claim.

In order to establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that she "(1) is a disabled person as defined by the

ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *Justice v. Crown Corl & Seal Co., Inc.*, 527 F.3d 1080, 1086 (10th Cir. 2008). To satisfy the ADA's definition of a disability, a plaintiff must "(1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007).

Plaintiff contends that she reasonably believed her need for restroom breaks was an ADA qualifying disability because she obtained two "Certificates of Disability" from her doctor in January of 2008 and Defendant accommodated her need to take restroom breaks. (Doc. # 36-3, ¶2.) The first "certificate," dated January 2, 2008, consists of four words of analysis: "restroom breaks as needed." (Doc. # 38-1 at 2.) That certificate expired on January 31, 2008, and failed to (1) identify any specific impairment, (2) distinguish how Plaintiff's need to use the bathroom differed from anybody else's, or (3) indicate that she was substantially limited by the unknown condition. The second "certificate," dated January 24, 2007, is merely a doctor's note excusing Plaintiff from work for three days due to an upper respiratory infection.[4] (Doc. # 38-1 at 1.)

---

[4] Plaintiff claims the certificate of disability was dated January 24, 2008. However, the certificate cited to is dated January 24, 2007. If there is a separate certificate dated January 24, 2008, the Court has been unable to locate it in the evidentiary record.

During her deposition, Plaintiff acknowledged that the doctor's notes "never defined what type of restroom break was excused and which one wasn't." (Doc. # 29-1 at 190:10-14.)  Plaintiff also testified that she could use the restroom "as needed," regardless of the reason. (*Id.* at 190:20-23.)  For example, Plaintiff testified that she believed her restroom privileges allowed her to be in restroom auxiliary mode instead of taking sick leave when she suffered from food poisoning. (*Id.* at 190:8-23.)  Thus, Plaintiff believed that the certificates covered any reason she might have for using the bathroom, and not merely restroom breaks associated with any particular impairment.

Plaintiff also argues that her belief was reasonable because Defendant treated Plaintiff's request to use the restroom as needed as a request for accommodation. The fact that Defendant honored the doctor's note and allowed Plaintiff to take restroom breaks as needed does not mean that it regarded Plaintiff as disabled, nor does it make Plaintiff's belief any more reasonable.  *See Gaddy By and Through Gaddy v. Four B Corp.*, 953 F. Supp. 331, 338 (D. Kan. 1997) (noting that if courts interpreted an employer's accommodation as evidence that employer regarded employee as disabled, "employers would be discouraged from attempting to work with people who, though not actually disabled, feel themselves in need of some special treatment from their employer to help them obtain or keep their jobs.").

Based on the undisputed facts present in this case, Plaintiff has not proved that she is a disabled person as defined in the ADA.  Moreover, the Court finds that, even if Plaintiff believed that she suffered from a recognized ADA impairment, such belief was not a reasonable belief.  As such, Plaintiff fails to satisfy the first prong of the prima facie retaliation test with regard to her ADA claim.

b)   *FMLA retaliation claim*

In the instant case, Plaintiff engaged in protected activity when she took FMLA

leave from March 25, 2008 to April 7, 2008.  *See Metzler*, 464 F.3d at 1171 (stating

that plaintiff clearly engaged in protected activity by taking FMLA leave); *see also*

*Campbell*, 478 F.3d at 1287-88 (stating that an FMLA retaliation claim may be brought

"when the employee successfully took FMLA leave, was restored to her employment

status, and was adversely affected by an employment action based on incidents post-

dating her return to work.").  Thus, Plaintiff has satisfied the first prong of the prima

facie retaliation test with regard to her FMLA claim and the Court must next consider

whether Plaintiff has demonstrated that she was subjected to an adverse employment

action.

2.   <u>Adverse Employment Action</u>

Plaintiff contends that the July 11, 2008 Warning (Doc. # 29-13) and the August

11, 2008 Verbal Counseling[5] (Doc. # 29-16) constituted adverse employment actions.

The Court finds that these employment actions fail to satisfy the second requirement

for establishing a prima facie case of retaliation because no reasonable employee

would have found these employment actions to be materially adverse.

The test for what constitutes a materially adverse employment action is an

objective one.  *See Somoza* v. *Univ. of Denver*, 513 F.3d 1206, 1214 (10th Cir. 2008).

Thus, Plaintiff must demonstrate that a reasonable employee would have found the

---

[5] Although Plaintiff was eventually terminated, she does not argue that her
termination was the adverse employment action in violation of the ADA and FMLA's
anti-retaliation provisions.

13

challenged action to be materially adverse, *i.e.*, that "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1090 (10th Cir. 2007) ("To warrant trial, . . . a plaintiff need only show that a reasonable employee in [the plaintiff's] shoes would have found the defendant's conduct sufficiently adverse that he or she well might have been dissuaded by such conduct from making or supporting a charge of discrimination.").

The Tenth Circuit has instructed that the phrase "adverse employment action" should be liberally defined and is not limited to monetary losses in the form of wages or benefits. *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004). However, a written warning is not necessarily a materially adverse employment action. *See Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006) ("A written warning *may* be an adverse employment action only if it effects a significant change in the plaintiff's employment status.") (emphasis in original). The Warning issued to Plaintiff had minimal effect on Plaintiff's employment status. She was not demoted, her pay was not reduced, and her job responsibilities did not change.[6] *See id.*, 456 F.3d at 1225. The only effect the Warning had on Plaintiff's employment status was that her remote work privilege was revoked.

---

[6] The Warning indicated that "further occurrences of this nature will result in further disciplinary action up to and including termination." However, Plaintiff was an at-will employee and there is no evidence that this Warning increased the likelihood that she would be terminated or disciplined further.

Plaintiff argues that her remote privilege was particularly important given her need for frequent restroom breaks. However, there is no evidence in the record that Plaintiff's ability to take restroom breaks as needed would be affected by the revocation of her remote work privilege. Although working at the office may have been more burdensome to Plaintiff than working at home, "mere inconvenience" does not constitute an adverse employment action. *Annett*, 371 F.3d at 1239; *see also Luster v. Vilsack*, No. 08-cv-02399, 2010 WL 5070933, at *7 (D. Colo. Dec. 6, 2010) (finding that no rational jury could find that a plaintiff's change in desk location was an adverse employment action as opposed to an inconvenience). In addition, the Warning was eventually replaced with the Verbal Counseling letter and the Court notes that Plaintiff was on FMLA leave the entire month between the issuance of the Warning and the revocation of the Warning. Thus, Plaintiff never actually worked in the office after receiving the Warning.

The Verbal Counseling letter rescinded the Warning and reinstated Plaintiff's remote privilege. The only change in Plaintiff's employment status was that she was instructed to return to the office for one week of retraining. The Court finds that the Verbal Counseling letter did not constitute an adverse employment action because no reasonable jury would consider one week of retraining to be sufficiently adverse as to dissuade a reasonable employee from bringing a charge of discrimination. *See Couch v. Bd. of Trs. Of Mem'l Hosp. of Carbon Cnty.*, 587 F.3d 1223, 1243 (10th Cir. 2009) (requiring doctor to attend continuing education classes was not adverse employment action in First Amendment retaliation case).

15

That a reasonable employee would not be dissuaded from asserting her FMLA rights as a result of Defendant's actions is demonstrated by the fact that Plaintiff requested and took FMLA leave only three days after she received the Warning. As such, the Court finds that neither the Warning nor the Verbal Counseling constituted  materially adverse employment actions, *i.e.*, actions that would dissuade a reasonable worker from making or supporting a charge of discrimination.  *See Somoza*, 513 F.3d at 1214 (10th Cir. 2008) ("the fact that an employee continues to be undeterred in his or her pursuit of a remedy . . . may shed light as to whether the actions are sufficiently material and adverse to be actionable.").

## IV.  CONCLUSION

Based on the evidence in the record, Plaintiff has not shown that there exists a genuine issue for trial because she has not established a prima facie case of retaliation under either the ADA or the FMLA.  Her ADA retaliation claim fails because she has not demonstrated that she engaged in protected opposition to ADA-prohibited discrimination.  Her FMLA retaliation claim fails because she has not demonstrated that she suffered an adverse employment action as a result of taking FMLA leave.

Accordingly,  Defendant's Motion for Summary Judgment (Doc. # 29) is GRANTED.

IT IS FURTHER ORDERED that this case is DISMISSED WITH PREJUDICE.

The parties shall bear their own fees and costs.  The Final Trial Preparation

Conference set for June 24, 2011, and the five-day Jury Trial set to commence

July 11, 2011, are VACATED.

DATED:  June ___14___, 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge